**STATE of Iowa, Appellee,**

v.

**Edward L. SCOTT, Appellant.**

No. 86–458.

Supreme Court of Iowa.

May 13, 1987.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., William E. Davis, Co. Atty., and Victor Dietz, Asst. Co. Atty., for appellee.

Considered by McGIVERIN, P.J., and LARSON, CARTER, WOLLE, and LAVORATO, JJ.

WOLLE, Justice.

Defendant Edward Scott was charged, tried, convicted and sentenced for the crimes of second-degree burglary, second-degree theft, and carrying a dangerous weapon. *See* Iowa Code §§ 713.5, 714.2(2), 724.4 (1985). He contends that two erroneous evidentiary rulings—the denial of his motion to suppress and sustention of an objection to cross-examination during the jury trial—deprived him of a fair trial, warranting reversal of his convictions. We find no merit in his assignments of error and affirm.

Two adult women, roommates in a Davenport apartment, were the victims of the

burglary and theft involved in this case. One of the roommates was returning to her apartment in the early morning hours of November 3, 1985, followed by a friend in a separate automobile, when she noted that a light was on in the apartment even though her roommate was out of town. While parking her car, she noticed that the apartment light was no longer burning and simultaneously observed a black man dressed in dark clothing running behind the apartment building. She alerted her friend, who parked his car and escorted her to her apartment door. They discovered a television from the apartment in the yard, a window to the apartment open, and the window's screen removed. The friend explored the premises while the resident waited in the car at the curb. She then observed a black man enter a blue Chevrolet Nova parked directly in front of the vehicle where she was sitting. The man was "dressed the same" as the man she earlier had seen running behind her apartment building. She immediately phoned the local police and, when they arrived five minutes later, described to them the car and the suspect, a "black male dressed in dark clothing."

The break-in and victim's descriptions were reported in a radio transmission dispatched to two police officers patrolling the area in an unmarked vehicle. The officers searched the neighborhood for five or ten minutes before recalling that the defendant, a black man, drove a blue Nova and frequented a residence less than a mile from the apartment where the break-in had occurred. The officers drove to that nearby residence and observed defendant's blue Nova in the driveway. As one of the officers was walking up the driveway toward the Nova, defendant emerged from the apartment building and approached the officer. The officer requested that defendant accompany him to the officers' vehicle to discuss the burglary. He then frisked defendant and found in his pants pocket a locked knife with a four-inch blade. The officers arrested defendant, searched the apartment he had exited, and seized jewelry found there that belonged to one of the victims.

Defendant asserts that the trial court incorrectly overruled his pretrial motion to suppress evidence of the knife, alleging that it was obtained in an illegal detention and search of his person. He also challenges the trial court's refusal to allow him to elicit cross-examination testimony establishing the wholesale value of the stolen jewelry.

## I. *The Fourth Amendment Issue.*

Defendant's narrow claim based on the fourth amendment to the United States Constitution is that the knife's admission into evidence was improper because the officers "had no right to detain and frisk [him] without some additional information linking [him] or this common make of automobile to the crime in question." He does not argue that the officers lacked probable cause to arrest him, and our de novo review is limited to a determination whether the detention and patdown search of defendant violated his constitutional rights.

A police stop-and-frisk is constitutionally valid if the officer had "specific and articulable cause to support a reasonable belief that criminal activity may have occurred." *State v. Aschenbrenner,* 289 N.W.2d 618, 619 (Iowa 1980). Stressing that the record does not show he "was the only black in the area" or that "the Nova was distinctive in any manner," defendant asserts the stop was invalid because the police officers had insufficient information to form a reasonable belief that defendant had engaged in criminal activity. We disagree. The record discloses that these officers had factual information comparable to that we have found sufficient for similar searches in several recent cases. *See State v. Schubert,* 346 N.W.2d 30, 31–32 (Iowa 1984) (reasonable cause where trooper stopped van matching radioed description of van carrying an armed man threatening the safety of a named resident); *State v. Lamp,* 322 N.W.2d 48, 51 (Iowa 1982) (reasonable cause where officer four and one-half hours later and five miles from the crime scene stopped murder suspect matching victim's description of van and assailant); *State v. Henderson,* 313 N.W.2d 564,

565 (Iowa 1981) (reasonable cause for stopping gold pickup carrying men matching description of robbery suspects as two white males in a gold pickup traveling south).

In *Lamp* we outlined the factors we considered most persuasive in determining that the stop was founded on reasonable cause:

> In this case Officer Bowersox clearly had reasonable cause to stop defendant: (1) he was investigating a specific crime; (2) he had been given a description of the assailant and the vehicle he was driving; and (3) the perpetration of the crime was reasonably close in time (approximately four and one-half hours) and distance (approximately five miles) to the investigatory stop under the circumstances.

322 N.W.2d at 51; *accord State v. Hawthorne*, 353 N.W.2d 889, 891 (Iowa App. 1984). *See generally* 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3(d), at 461 (1987). Those same factors are persuasive here. The victim's description of the suspect and his car were adequate to justify an investigatory stop when within thirty minutes of the reported criminal activity an individual matching that description was up and about at that early morning hour not far from the crime site. The State has satisfied its burden of showing the officers had reasonable cause for stopping defendant.

Weapons searches are permitted for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968). An officer investigating a burglary, especially in a residential area at an early morning hour, has reasonable cause to believe a frisk is necessary for his safety since the suspect might be "armed with weapons, or tools such as knives and screwdrivers which could be used as weapons...." *People v. Myles*, 50 Cal.App.3d 423, 430, 123 Cal. Rptr. 348, 352 (1975); *see People v. Dalton*, 142 Cal.App.3d 599, 191 Cal.Rptr. 199, 202 (1983).

The trial court correctly denied defendant's motion to suppress the prosecution's use of the knife in evidence.

## II. *Evidence of Price Markup.*

One element of the crime of theft in the second degree is that the stolen property have a value in excess of five hundred dollars. Iowa Code §§ 714.1(1), 714.2(2) (1985). To prove this element of the charged offense the State produced a witness who testified that some of the stolen jewelry was insured for $1200, while the uninsured jewelry was "worth right around $400." When asked on direct examination her basis for the $400 figure, the witness responded

> Well, how much I paid for them, plus I worked in a jewelry store and I bought most of them myself while I worked there, so I do—I know how much they were worth at the time.

In the course of defendant's cross-examination probe into the witness's jewelry store employment, the following exchange occurred:

> Q. Can you tell the jury what the normal markup is to retail on jewelry items:
>
> [Counsel for the prosecution]: Judge, I believe I'll object. This is irrelevant how much a jeweler makes on a sale of a product.
>
> [Counsel for defendant]: I think it's relevant as to the value of these items, Your Honor, and if this witness is able to tell me what the normal markup is, I believe the jury will be able to infer a value of the items—
>
> THE COURT: Objection is sustained because the issue is market value, it's not wholesale value.

Defense counsel in an offer of proof informed the court that had the witness been

permitted to reply, she would have testified that the "normal range of markup on jewelry is between 50 and 750%." Defendant contends that the percentage markup from wholesale to retail would have provided the jury a means of determining an alternative "cost" standard of value if it rejected the prosecution's evidence of insured value and retail value. He contends that the legislature has recently liberalized the measure of value of stolen property for purposes of Iowa's theft statute, allowing the fact finder greater leeway in determining the worth of stolen property. *Compare* Iowa Code § 714.3 (1985) (Property value is its "highest value by any reasonable standard at the time that it is stolen."), with Iowa Code § 714.3 (1983) (Property value is its "normal market or exchange value within the community at the time that it is stolen."). When the legislature amended that statute it also added a sentence explaining the new phrase "reasonable standard":

> Reasonable standard includes but is not limited to market value within the community, actual value, or replacement value.

Iowa Code § 714.3 (1985), as amended by 1984 Iowa Acts ch. 1162, § 1.

We disagree with the defendant's theory that the legislature changed the language of section 714.3 to give finders of fact more leeway in determining the value of stolen property as an element of the crime of theft. The changed language reflects instead a legislative intent to restrict the fact finder by instructing that the appropriate measure of value is the "highest value by any reasonable standard."

■ Before the statute was amended, we had held that the finder of fact could consider wholesale as well as resale values of property in determining the market value of stolen goods. *State v. Boyken*, 217 N.W.2d 218, 221 (Iowa 1974). We have said that testimony concerning value of stolen property is to be liberally received. *See State v. Savage*, 288 N.W.2d 502, 504 (Iowa 1980). We read the 1984 amendments to section 714.3 as a clear statement that the finder of fact, in this case the jury, is to focus on that standard which produces the higher of several possible values.

■ In sustaining the relevancy objection to the proffered evidence, the trial court pointed out that the prosecution was relying on a market value standard rather than a wholesale value standard in proving the value element of the charged offense. Section 714.3 as amended gave the prosecution that option. It is apparent the trial court was pointing out how slight would be the probative value of the proffered cross-examination response to the question about markups of jewelry in general. Defendant did not explain to the trial court and has not demonstrated in this appeal what probative value that answer would have on the specific facts of this case. *See* Iowa R.Evid. 701.

Moreover, the admissibility of relevant evidence is always subject to the trial court's application of the balancing test of Iowa Rule of Evidence 403. Even relevant testimony, evidence tending to prove some fact in issue, may be excluded if its probative value

> is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We routinely give trial courts wide discretion in their application of rule 403, recognizing that the attention of a jury should not be "diverted unduly from the substantive questions it must answer." *Blakely v. Bates*, 394 N.W.2d 320, 324 (Iowa 1986); *see State v. Martin*, 385 N.W.2d 549, 552 (Iowa 1986); *Carter v. MacMillan Oil Co., Inc.*, 355 N.W.2d 52, 55 (Iowa 1984). The trial court certainly did not abuse its discretion in upholding the prosecution's relevancy objection to the proffered testimony concerning the general, wide fluctuation in markup of the wholesale cost of jewelry.

Neither of defendant's two assignments of error has merit. Defendant received a fair trial.

AFFIRMED.