Grafton
No. 2005-528

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL L. HAMMELL

Argued: January 11, 2007
Opinion Issued: March 6, 2007

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Michael L. Hammell, appeals his conviction on one count of operating after certification as a habitual offender, *see*

RSA 262:23 (2004) (amended 2006), following a jury trial in Superior Court (*Houran*, J.). We reverse and remand.

The facts are not in dispute. In July 2002, the defendant was arrested for driving after having been certified as a habitual offender. *See* RSA 262:23. During the ensuing trial, identification became a contested issue. In order to establish that the defendant was the same Michael Hammell who had previously been certified as a habitual offender, the State, through the arresting officer's testimony, sought to admit information contained in a criminal history record for Michael Hammell. In particular, the State sought to admit information indicating that Michael Hammell had tattoos and scars in various places on his body. The State also sought to admit a photograph from Michael Hammell's department of motor vehicles (DMV) record. Over the defendant's objection, the trial court admitted both pieces of evidence. The officer then testified that the tattoos and scars described in the criminal history record matched those that he observed on the defendant's body at the time of booking. The officer also testified about the height, weight, hair and eye color, and date of birth listed on Michael Hammell's criminal history record. Finally, the officer testified that the individual in the DMV photograph was the defendant.

On appeal, the defendant argues that the trial court erred in admitting the information about the scars and tattoos from the criminal history record because it was hearsay, and in admitting the photograph from the DMV record because it was not disclosed in a timely manner in accordance with Superior Court Rule 98(A)(2)(iii). We review a trial court's rulings on the admissibility of evidence under an unsustainable exercise of discretion standard, and reverse only if the defendant demonstrates the rulings are clearly untenable or unreasonable to the prejudice of his case. *Carignan v. N.H. Int'l Speedway*, 151 N.H. 409, 416 (2004); *State v. Bouchard*, 138 N.H. 581, 583 (1994).

We first address the defendant's argument that the trial court erred in admitting the information about scars and tattoos from the criminal history record because it constituted inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.H. R. Ev. 801(c). As a general rule, hearsay is not admissible unless an exception to that general rule applies. N.H. R. Ev. 802. Neither side appears to dispute that the information from the criminal history record constitutes hearsay. Rather, the dispute between the parties—and hence our focus—is upon the applicability of the two exceptions asserted by the State: the public records exception set forth in Rule 803(8) and the business records exception set forth in Rule 803(6). *See* N.H. R. Ev. 803(6), (8).

Rule 803(8), entitled "Public Records and Reports," permits the following types of hearsay to be admitted into evidence:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases, matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

N.H. R. Ev. 803(8). Because neither subpart (A) nor subpart (C) applies here, we focus upon the applicability of subpart (B).

■ On its face, Rule 803(8)(B) broadly precludes the State, in criminal cases, from introducing records containing "matters observed by police officers and other law enforcement personnel." *But see* N.H. R. Ev. 803(8)(C) (defendant may, under certain conditions, introduce such information against the State). We find nothing in the record that indicates how the information pertaining to scars and tattoos on Michael Hammell's body was gathered before its ultimate placement in the criminal history record. The information may have been gathered when a police or corrections officer observed Michael Hammell, or it may have been gathered in some other context. The State points to no portion of the record demonstrating that it laid the type of foundation that would shed light on these issues. "The party offering evidence generally bears the burden of demonstrating its admissibility." *State v. Walters*, 142 N.H. 239, 242 (1997).

Instead, the State invites us to construe Rule 803(8)(B) narrowly by holding that it applies only to observations made as part of an investigation and then to conclude that the information about scars and tattoos in the criminal history record constituted nothing more than routine, objective observations which were not gathered as part of an investigation. We acknowledge that some courts have read into similar or identical versions of Rule 803(8)(B) a requirement that the observations be "made by law enforcement officials at the scene of a crime, or in the course of investigating a crime." *United States v. Quezada*, 754 F.2d 1190, 1193 (5th Cir. 1985). Likewise, we acknowledge that these courts, in the context of "public records prepared for purposes independent of specific litigation,"

*id.* at 1194, have permitted the admission of "documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency." *Id.* However, the basis for admitting this type of evidence often rests upon:

> a distinction for purposes of Rule 803(8)(B) between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation. *See, e.g., United States v. Orozco*, 590 F.2d 789, 793-94 (9th Cir. 1979) (admitting computer records of license plates on cars crossing the border due to non-adversarial setting in which information was gathered) *cert. denied*, 439 U.S. 1049, 99 S. Ct. 728, 58 L. Ed. 2d 709 (1978); *United States v. Union Nacional De Trabajadores*, 576 F.2d 388, 390-91 (1st Cir. 1978) (admitting Marshal's return of service); *United States v. Grady*, 544 F.2d 598 (2d Cir. 1976) (admitting reports on firearms serial numbers for Northern Ireland law enforcement agency on basis that they were records of a routine function).

*Id.*

Here, unlike *Quezada* and the cases cited therein, we have no way of knowing on the record before us how the information at issue was gathered before its placement in the record. *Compare State v. D'Alo*, 649 A.2d 498, 499 (R.I. 1994) (holding that an abstract of a defendant's driver's record showing the motor vehicles registered to him, his convictions for violations, and the accidents in which he had been involved was admissible under the state's version of Rule 803(8)(B) because it did not contain information observed by law enforcement personnel), *with United States v. Horned Eagle*, 214 F. Supp. 2d 1040, 1042-43 (D.S.D. 2002) (holding that a police report containing observations made by police officers after a defendant's arrest was inadmissible under Federal Rule of Evidence 803(8)(B)). Indeed, in *Quezada* a border patrol agent testified as to precisely how the document at issue there was generated. *Quezada*, 754 F.2d at 1191-92. Although the State emphasizes the fact that the information was included within a criminal history record, application of Rule 803(8)(B) focuses upon the "matters observed by police officers"—not merely the documents in which such observations happen to be found. Accordingly, in another case, where the record is more fully developed, we would be in a better position to consider the types of issues discussed in *Quezada*.

The State argues, in the alternative, that "[b]ecause the record at issue here is more akin to a business record than a police report generated

as part of an investigation, the exclusion does not apply in this case." *See* N.H. R. Ev. 803(6). However, "[i]nasmuch as Rule 803(8)(B) specifically excludes reports prepared by law enforcement officers from the public records exception to the hearsay rule if used against a criminal defendant, such records cannot be admitted under the business records exception." *Horned Eagle*, 214 F. Supp. 2d at 1042. That is, "the business records exception cannot be used as a 'back door' to introduce evidence that would not be admissible under Rule 803(8)(B)." *Id.* As one court has explained in the context of the identical federal rule of evidence, matters observed by police and law enforcement personnel are not admissible in criminal cases "because of the adversarial nature of the confrontation between the police and the defendant in criminal cases." *Id.* at 1042-43; *see* FED. R. EVID. 803(8)(B); *accord United States v. Union Nacional de Trabajadores*, 576 F.2d 388, 391 (1st Cir. 1978). Were we to hold that information, regardless of where and how it was gathered, is admissible under Rule 803(6) (the business records exception) simply because it is found within a criminal history record, we would be enabling an end run around one of the very purposes for which Rule 803(8)(B) was promulgated. In order to alleviate this concern, the party bearing the burden of demonstrating the admissibility of the evidence should elicit foundational testimony to explain how the information was collected so that the applicability of Rule 803(8)(B) can be determined.

In light of our discussion above and given the state of the record before us, we cannot conclude that the State met its burden at trial of demonstrating the admissibility of the evidence here at issue. *See Walters*, 142 N.H. at 242. Consequently, because the criminal history record "cannot be moored in the safe harbor of th[e] [803(8)(B)] exception or, *a fortiori*, the business records exception, it falls prey to the hearsay rule and is inadmissible as evidence." *Horned Eagle*, 214 F. Supp. 2d at 1043.

The admission of inadmissible evidence does not always require reversal. *See State v. Hall*, 152 N.H. 374, 379 (2005). However, in this case, the State has not argued harmless error with respect to the information from the criminal history record. Because the State has the burden to prove the harmlessness of an error beyond a reasonable doubt, we can only interpret its failure to argue the issue as an implicit concession that if we found error, it would not be harmless. *State v. Kirsch*, 139 N.H. 647, 655-56 (1995). Under these circumstances, we cannot engage in a harmless error analysis. *Id.* Instead, we must conclude that the defendant met his burden on appeal, *see Bouchard*, 138 N.H. at 583, reverse the conviction and remand for a new trial. *See Kirsch*, 139 N.H. at 655-56. Since we reverse on the defendant's first assignment of error, we need not reach the second, as it is unlikely that the timing issue that gave rise to the second

assignment of error will recur in any post-remand proceedings. *See Figlioli v. R.J. Moreau Cos.*, 151 N.H. 618, 622 (2005).

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.