NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2017-0425


THE STATE OF NEW HAMPSHIRE

v.

REILLY O. LEITH

Argued:  October 18, 2018
Opinion Issued:  March 7, 2019


Gordon J. MacDonald, attorney general (Stephen D. Fuller, senior assistant attorney general, on the memorandum of law and orally), for the State.


Bosen & Associates, PLLC, of Portsmouth (Albert Hansen on the brief and orally), for the defendant.


LYNN, C.J.  The defendant, Reilly O. Leith, appeals her conviction in the Superior Court (Wageling, J.) for theft by unauthorized taking.  See RSA 637:3 (2016).  She raises issues concerning the admissibility and sufficiency of the evidence presented by the State to establish that the value of the stolen property exceeded $1,000, and thus rendered the offense a class B felony.  See RSA 637:11, II(a) (2016).  We affirm.

I

The jury could have found the following facts. On September 21, 2013, a loss prevention officer apprehended the defendant outside a Kohl's store in Newington after observing what she identified as shoplifting through store security cameras. The officer retrieved 30 stolen items from the defendant's person, as well as a bag she was carrying, and contacted the police. Using an inventory form, the officer recorded the price of the stolen merchandise by matching each item with its corresponding price tag. The total tagged price of the items stolen by the defendant, as recorded by the loss prevention officer on the inventory form, was $1,174. The defendant was subsequently charged with felony-level theft. See RSA 637:3, :11, II(a).

During direct examination of the loss prevention officer at trial, the State sought to admit the inventory form completed by the officer immediately following the theft. The defendant objected on hearsay, relevance, best evidence, confrontation, and burden-shifting grounds. The trial court admitted the inventory form and overruled the defendant's objections, explaining that: (1) the jurors could give the form "the weight that they think it deserves"; (2) the form was admissible under the business records exception to the hearsay rule; (3) "the accuracy and authenticity and use of numbers aren't substantially in doubt"; (4) the defendant was able to effectively cross-examine the loss prevention officer; and (5) no burden shifting had occurred. The defendant did not call any witnesses.

At the close of evidence, the defendant moved to dismiss the felony indictment, arguing that "viewing all evidence in a light most favorable to the State, no rational trier of fact could conclude beyond a reasonable doubt that [the defendant] took merchandise in excess of $1,000." The State responded that it had introduced sufficient evidence to prove that the defendant had stolen over $1,000 worth of property, given the evidence of the "retail value" of the items, which, the State asserted, represented the "highest market value." The trial court denied the defendant's motion to dismiss, finding that there was sufficient evidence upon which a rational jury could find that the State had sustained its burden.

The defendant did not object to the court's proposed jury instructions on the definition of value. The court instructed the jury that:

> Value means the market value or the price which the property will bring in a fair market at the time of the alleged theft, after reasonable efforts have been made to find the purchaser who will give the highest price for it. Value means the highest amount determined by any reasonable standard of property.

The jury convicted the defendant, and this appeal followed.

2

We turn first to the defendant's evidentiary challenges. We accord the trial court considerable deference in determining the admissibility of evidence, and we will not disturb its decision absent an unsustainable exercise of discretion. State v. Lynch, 169 N.H. 689, 701 (2017). To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's rulings were clearly untenable or unreasonable to the prejudice of her case. Id.

The defendant initially asserts that the loss prevention officer lacked the requisite personal knowledge to testify regarding the tagged prices of the stolen items. See N.H. R. Ev. 602. She argues that the officer's testimony was inadmissible because it was based on information gained from price tags affixed to the stolen items, which, the defendant contends, are themselves inadmissible hearsay. See N.H. R. Ev. 801, 802. A careful examination of the record reveals that the State did not offer its evidence of value through the loss prevention officer's testimony, but rather through its admission of the inventory form, the foundation of which was laid by the officer's testimony. Thus, in reviewing the trial court's admission of evidence regarding value, we focus our analysis on the defendant's assertion that the inventory form was inadmissible hearsay.

"Hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." State v. Hammell, 155 N.H. 47, 48 (2007) (quotation omitted); see N.H. R. Ev. 801(c). As a general rule, hearsay is not admissible unless an exception to the hearsay rule applies. Hammell, 155 N.H. at 48. The inventory form was presented by the State at trial to prove the prices listed on the tags affixed to the stolen items. Thus, because the inventory form constituted an out-of-court statement, offered to prove the truth of the matter asserted (the prices listed on the form), the form is hearsay. See N.H. R. Ev. 801(c). This conclusion does not end our analysis, however, as next we look to whether the inventory form falls within a recognized exception to the hearsay rule. The trial court determined that the form was admissible because it fell within the business records exception. See N.H. R. Ev. 803(6). We agree. Because the loss prevention officer's testimony established the inventory form as a business record, the trial court sustainably exercised its discretion in admitting the form.

For evidence to be admitted under the business records exception, Rule 803(6) requires that the record be "made at or near the time" of the event "by, or from information transmitted by, a person with knowledge." N.H. R. Ev. 803(6).[1] In addition, the rule mandates that the record be "kept in the course

---

[1] In 2017, after the defendant's trial, stylistic, non-substantive amendments were made to New

of a regularly conducted business activity," and that it be "the regular practice of that business activity" to make the record. Id. The requirements of Rule 803(6) must be established through "testimony of the custodian or other qualified witness," id., as such testimony "constitutes the proper foundation for admission of the proffered record," State v. Wall, 154 N.H. 237, 242 (2006) (quotation omitted). Finally, the Rule requires that neither the form's "source of information" nor the circumstances surrounding its preparation indicate a "lack of trustworthiness." N.H. R. Ev. 803(6).

At trial, the loss prevention officer testified that she had created inventory forms "[h]undreds" of times, and described in detail the information to be included when filling out the form. She further testified that she created the form at issue after apprehending the defendant. This information provided the trial court with a basis to conclude that the form was created "at or near the time of" the theft by a "qualified witness." N.H. R. Ev. 803(6); see Wall, 154 N.H. at 244 ("The 'qualified witness' required by Rule 803(6) need only be someone who understands the system of how the document was made."). In addition, the officer stated that inventory forms are completed whenever a loss is discovered, whether or not a shoplifter is apprehended and regardless of prosecution. She added that the completed forms are then stored in Kohl's "loss prevention management system," where they are accessed by the "corporate resource department" to track "non-recovered merchandise" and calculate revenue loss. This testimony supplied the foundation for the court to conclude that the inventory form was used "in the course of a regularly conducted business activity," and that "it was the regular practice of that business activity to make" the form. N.H. R. Ev. 803(6).

The loss prevention officer also testified that the tagged price of Kohl's merchandise is established by an agreement between Kohl's and its vendors. She stated that the merchandise is then tagged by the vendors, and arrives at the store with the price tags already affixed. She further testified that she completed the inventory form at issue by referring to the stolen items and their corresponding price tags. This testimony provided a basis for the court to conclude that the officer completed the form using information that was transmitted by Kohl's, one of the parties responsible for establishing the price of the merchandise, and therefore a "person with knowledge" of the items' price. Id.

Furthermore, there is nothing in the record to indicate that the source of the information in the inventory form, or its method of preparation, indicates a "lack of trustworthiness." Id. To the extent the defendant argues on appeal that price tags themselves are inadmissible hearsay, and thus the inventory form contains hearsay within hearsay, and is therefore inadmissible, we disagree. Hearsay within hearsay is inadmissible unless each part of the

Hampshire Rule of Evidence 803(6).

combined statements conforms with an exception to the hearsay rule. In re Brittany L., 144 N.H. 139, 144 (1999). Like the inventory form, the tagged prices of the items reflect out-of-court statements made by Kohl's and its vendors that were offered to prove the truth of the matter asserted, and thus are hearsay. See N.H. R. Ev. 801(c). Given the loss prevention officer's testimony at trial, however, the proper foundation was laid to establish the price tags as business records. See N.H. R. Ev. 803(6); Stephans v. State, 262 P.3d 727, 732 (Nev. 2011) ("To admit price tag evidence under the recognized hearsay exceptions . . . requires foundational proof. The price tag must be authenticated and a basis for its admission shown.").

As stated above, the loss prevention officer testified that the tagged price of Kohl's products is established through an agreement between Kohl's and its vendors, and that vendors affix the tags to the merchandise before distributing the products to the store. As someone who understood the system of how the price tags were made, the loss prevention officer was a "qualified witness" under the requirements of Rule 803(6). See Wall, 154 N.H. at 244 (stating that a qualified witness "need not have participated in the document's creation or know who created it"). Moreover, this same testimony established, for purposes of application of the business records exception, that Kohl's price tags are created "at or near the time" of agreeing on a price by "a person with knowledge" (Kohl's vendors); that price tags are records created by Kohl's and its vendors "in the course of a regularly conducted business activity" (pricing its merchandise); and that it is "the regular practice of that business activity" to make the records. N.H. R. Ev. 803(6); see State v. Odom, 393 S.E.2d 146, 151 (N.C. Ct. App. 1990) (stating that price tags "were business records kept in the course of a regularly conducted business whose regular practice it was to make such records").

Furthermore, there is nothing in the record to indicate that the source of the information on the price tags, or their method of preparation, indicates a "lack of trustworthiness." N.H. R. Ev. 803(6). Here, the loss prevention officer testified that Kohl's, in collaboration with its vendors, establishes the price of its merchandise. This price, once recorded on tags affixed to the merchandise, represents Kohl's "opinion as to the value of [its] goods offered for sale." State v. Downing, 654 N.W.2d 793, 799 (S.D. 2002). An owner's opinion testimony as to the value of its property, so long as it is based on personal knowledge, is admissible. Stephans, 262 P.3d at 731; Downing, 654 N.W.2d at 799; see McNamara v. Moses, 146 N.H. 729, 732 (2001). Thus, because the prices on the tags were established by an owner with the requisite personal knowledge of its property, the circumstances surrounding the creation of the tags did not indicate a "lack of trustworthiness." N.H. R. Ev. 803(6).

In finding that the inventory form, as well as the price tags on which the form was based, do not indicate a "lack of trustworthiness," we recognize that the loss prevention officer conceded at trial that she had no way of knowing if

the prices displayed on the tags were accurately recorded by Kohl's vendors. However, as we stated in Wall, any deficiencies in the evidence presented by the State were considerations for the jury. Wall, 154 N.H. at 244. In Wall, the defendant challenged the veracity of blood test results contained within a hospital laboratory report, asserting that the hospital did not follow a proper chain of custody while in possession of her blood samples. Id. at 239, 241-42. We concluded, however, that the trial court sustainably exercised its discretion in admitting the report into evidence, as it fell within the business records exception to the hearsay rule. Id. at 244. In so doing, we explained that the defendant's chain-of-custody argument did "not compel a finding that the report lacked trustworthiness under Rule 803(6)." Id. "Generally, objections that an exhibit may contain inaccuracies, ambiguities, or omissions go to the weight and not the admissibility of the evidence." Id. (quotation omitted). Thus, a "party need not prove that business records are accurate before they are admitted." Id. (quotation omitted).

The same is true here, where, at trial, the defendant called into question the accuracy of the prices recorded on the tags. This possible inaccuracy was a factor to be considered by the jury in determining the reliability of the price tag evidence to prove the value of the stolen merchandise. See id. at 244 ("Evidence need not be infallible to be admissible."). Moreover, courts that have deemed price tags admissible under an exception to the hearsay rule have done so based on the fact that "retail stores and consumers" rely on price tags when buying and selling merchandise. Odom, 393 S.E.2d at 151; accord People v. Mikolajewski, 649 N.E.2d 499, 504 (Ill. App. Ct. 1995) (stating that price tags are self-authenticating documents partly due to "the day-to-day reliance by members of the public on their correctness and the unlikelihood of fabrication" (quotation omitted)); Robinson v. Com., 516 S.E.2d 475, 478-79 (Va. 1999) (creating a judicial hearsay exception for price tags, and stating that "the inherent unreliability of hearsay is not present" where a purchaser understands that the tagged price is what must be paid in order to acquire an item, and that "it would be unreasonable and unnecessary to require that in each case a merchant must send to court not only a security person but also other personnel to establish the reliability of the information shown on a price tag affixed to an item that has been stolen"). Thus, the trial court sustainably exercised its discretion in admitting the inventory form as a business record because the loss prevention officer's testimony laid the foundation for admission of the inventory form as such. Furthermore, had the price tags been offered as evidence of value at trial, her testimony would have provided a sufficient foundation for their admission as well.[2]

---

[2] In response to the defendant's argument that the loss prevention officer lacked the requisite knowledge to testify as to value, we note that, because the price tag evidence was not inadmissible hearsay, her testimony, even without the inventory form, may have been admissible, so long as the same foundation was laid. See Pace v. State, 375 S.W.3d 751, 757 (Ark. Ct. App. 2010) (stating that if "the employee's testimony provides an adequate foundation to satisfy an exception to the hearsay rule such as the business-records exception . . . , then the law regards the

The defendant next argues that under the best evidence rule, the price tags themselves, rather than the inventory form, must have been introduced at trial to establish the tagged prices of the stolen items. The best evidence rule states that an "original writing, recording, or photograph is required" to prove the content of a writing. N.H. R. Ev. 1002. The rule originated at common law to "guarantee against inaccuracies and fraud by insistence upon production of original documents." N.H. R. Ev. 1001 Reporter's Notes. Here, the accuracy of the inventory form has not been questioned by the defendant, however, and there is nothing in the record to indicate that admission of the price tags would "guarantee against inaccuracies." Id.; see 2 George Dix et al., McCormick on Evidence § 243.1, at 173 (7th ed. 2013) ("The purpose of [rules requiring the production of original writings] is simple and practical. That purpose is to secure the most reliable information as to the contents of documents, when those terms are disputed. A mystical ideal of seeking 'the best evidence' or the 'original document' as an end in itself is no longer the goal. Consequently when an attack is made on appeal on the judge's admission of secondary evidence, it seems that the reviewing tribunal should ordinarily make inquiry of the complaining counsel, 'Does the party whom you represent actually dispute the accuracy of the evidence received as to the material terms of the writing?'"). In other words, there is no reason to believe in this case that the prices represented on the stolen items' tags were not accurately transferred to the inventory form.

Indeed, in responding to the defendant's objections, the trial court found that "the accuracy and authenticity and use of numbers aren't substantially in doubt." And, when asked by the State at trial if the form represented "a fair and accurate list of the values that you saw on the tags," the loss prevention officer responded, "yes." Cf. Beech v. State, 439 So. 2d 1331, 1335 (Ala. Crim. App. 1983) (stating that where transcript of defendant's pre-trial statement was offered at trial instead of tape recording, and defendant did not challenge the accuracy of the transcript, "there is no reason to doubt the authenticity of the transcription, and the trial court will not be held in error for admitting it"). Furthermore, at trial, the State explained that the tagged merchandise was returned to Kohl's. We have previously held that where a defendant objected citing the best evidence rule but did not question the accuracy of the evidence submitted in lieu of the originals, and the plaintiff explained that the originals were unavailable without dispute from the defendant, the trial court acted within its discretion in admitting the evidence. Clooney v. Clooney, 118 N.H. 754, 755 (1978). We draw the same conclusion here.

employee's testimony as sufficiently trustworthy to be admitted into evidence"); State v. Farrer, 787 P.2d 935, 936 (Wash. Ct. App. 1990) (holding that testimony of grocery store security officer as to price of stolen items, although based on ticket price, was admissible given that "[a]n adequate foundation ha[d] been laid"). "Under well established rules of evidence, . . . a witness may testify to the contents of records kept in the regular course of business without having personal knowledge of the facts reported therein." Cities Service Oil Company v. Coleman Oil Company, Inc., 470 F.2d 925, 932 (1st Cir. 1972).

7

Next, the defendant argues that admission of the inventory form violated her right to confrontation because it was prepared in connection with a criminal investigation, and thus was testimonial in nature. This argument is based on the analysis applicable to the Sixth Amendment to the Federal Constitution, see U.S. CONST. amend. VI; Crawford v. Washington, 541 U.S. 36, 68 (2004) (concluding that testimonial hearsay evidence is barred by Confrontation Clause unless witness is unavailable and defendant had prior opportunity to cross-examine), rather than the analysis applicable to the New Hampshire Constitution's Confrontation Clause, see N.H. CONST. pt. I, art. 15. Because we have not adopted the Crawford analysis under the State Constitution, and the defendant neither argues that we should do so now nor addresses our applicable Confrontation Clause test, namely, that of Ohio v. Roberts, 448 U.S. 56, 66 (1980), overruled by Crawford, 541 U.S. at 68, we will not consider the admissibility of the inventory form under the New Hampshire Constitution. State v. Watson, 170 N.H. 720, 728 (2018). Instead, we limit our analysis to the defendant's Sixth Amendment claim. Id.

That claim fails because, as discussed above, the inventory form was not prepared for litigation purposes, and thus was not testimonial. While falling within a hearsay exception does not automatically place the form outside the realm of testimonial evidence, the fact that the form was "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial" does. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009). The loss prevention officer testified that inventory forms are completed whenever a loss is discovered, "regardless of prosecution." She further testified that inventory forms are created by Kohl's to track non-recovered inventory and calculate revenue loss. Thus, the trial court sustainably exercised its discretion in admitting the form, as there was evidence at trial to support the conclusion that the form was created for purposes other than "establishing or proving some fact at trial." Id. at 324.

The defendant's final evidentiary challenge is one of unconstitutional burden shifting. She asserts that in allowing the State to prove value by the "tagged price" of the stolen merchandise, a form of evidence that she deems untrustworthy, she is forced to prove her innocence by establishing the "actual value" of the items. As already discussed, however, the evidence of value was properly admitted by the trial court. Because the State offered admissible evidence of value, no burden was placed on the defendant to disprove felony theft. Furthermore, the defendant's burden-shifting argument boils down to little more than a protest that, in the absence of her presentation of evidence to refute the price tag evidence offered by the State, the jury will be more likely to find the State's evidence persuasive. We have little reason to doubt that this thesis is true, but the mere fact that a decisionmaker is more apt to accept as true evidence that is not controverted than evidence that is controverted — a seemingly universal phenomenon — hardly amounts to unlawful burden

8

shifting. Thus, the trial court sustainably exercised its discretion in overruling the defendant's burden-shifting objection.

III

We turn next to the defendant's challenge to the sufficiency of the evidence. The defendant asserts that because the non-premium items stolen by the defendant might have been sold by the store at a discount, "no rational trier of fact could have found the State proved value in excess of $1,000 beyond a reasonable doubt." In response, the State argues that the total tagged price recorded in the inventory form represents "value" as it is defined in New Hampshire for purposes of determining the grade of theft: "the highest amount determined by any reasonable standard of property or services." RSA 637:2, V (2016). For the reasons stated below, we agree with the State that it produced sufficient evidence from which the jury could find that the value of the stolen items was "more than $1,000 but not more than $1,500." RSA 637:11, II(a).

A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo. State v. Morrill, 169 N.H. 709, 718 (2017). To prevail upon a challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Stanin, 170 N.H. 644, 648 (2018).

New Hampshire's definition of value is consistent with § 223.1(2)(c) of the Model Penal Code, which states that "[t]he amount involved in a theft shall be deemed to be the highest value, by any reasonable standard, of the property or services which the actor stole or attempted to steal." Model Penal Code and Commentaries § 223.1(2)(c), at 126 (1980). Other jurisdictions have adopted this definition as well. See, e.g., Iowa Code § 714.3(1) (2019) ("The value of property is its highest value by any reasonable standard at the time that it is stolen. Reasonable standard includes but is not limited to market value within the community, actual value, or replacement value."); N.D. Cent. Code § 12.1-23-05(7) (2019) ("For purposes of grading, the amount involved in a theft under this chapter is the highest value by any reasonable standard."). In interpreting this statutory language, the Supreme Court of Iowa has stated that the definition reflects "a legislative intent to restrict the fact finder" to that "standard which produces the higher of several possible values." State v. Scott, 405 N.W.2d 829, 833 (Iowa 1987). The commentary to the Model Penal Code sets forth a similar purpose: "to put the transaction in a higher rather than a lower category where any one of several possible criteria of value justifies the higher classification." Model Penal Code and Commentaries § 223.1 cmt. 3(b), at 141.

At trial, the jury was presented with the following evidence of value: (1) that the total tagged price of the stolen merchandise was $1,174; (2) that five of the 30 items stolen by the defendant were "premium" products that "do not ever go on sale"; (3) that a sweater stolen by the defendant was shown to be on sale through video footage presented by the State; (4) that the loss prevention officer was unaware if any of the other non-premium items were on sale; (5) that items at Kohl's are put on clearance at a discount of between 30 and 90 percent; and (6) that none of the items that the defendant stole were on clearance. While it is possible that, given this evidence, the jury could have concluded that some, all, or none of the non-premium items may have sold for a price below that shown on the tags, this evidence did not preclude the jury from finding that the price tag amounts represented on the items constituted their <u>highest</u> reasonable value. <u>See</u> <u>Scott</u>, 405 N.W.2d at 833. That is, the jury could have rationally found, in valuing the items in question, that the price tags represented the "highest amount . . . by any reasonable standard." RSA 637:2, V.

Therefore, viewing the evidence presented at trial and all reasonable inferences therefrom in the light most favorable to the State, the defendant has failed to demonstrate that no rational trier of fact could have found her guilty beyond a reasonable doubt of the class B felony-level theft offense. <u>See</u> <u>Stanin</u>, 170 N.H. at 648.

<u>Affirmed</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.