LUCINI-PARISH INSURANCE, INC., Appellant, *v.* LEONARD and HELEN BUCK, Respondents.

No. 22275

August 20, 1992      836 P.2d 627

*Thorndal, Backus, Maupin & Armstrong,* and *Stephen C. Balkenbush,* Reno, for Appellant.

*Clark & Dickey,* Reno, for Respondents.

## OPINION

*Per Curiam:*

Respondents Leonard and Helen Buck ("Bucks") sued appellant Lucini-Parish Insurance, Inc., ("LPI") for failure to procure equine mortality insurance. The jury returned a verdict in favor of the Bucks and judgment was entered on the verdict. For the reasons discussed herein, we affirm.

### FACTS

In 1985, the Bucks' daughter developed an interest in horses. The Bucks bought her a horse in 1985 for $5,000. She began competing in show jumping. As her skills improved, the Bucks purchased more expensive horses. During 1987 through 1988, they purchased three more horses with prices ranging from $18,000 to $37,500.

Because of the value of these horses, the Bucks purchased equine mortality insurance to cover them. The Bucks always

obtained their insurance through LPI and always followed the same procedure to obtain the insurance. Mrs. Buck would direct one of her employees to contact LPI and to request that LPI procure equine mortality insurance to cover the animal. The Bucks' employee would send the necessary documents, and LPI would procure the insurance, usually through Lloyds of London. The Bucks never negotiated the costs or the duration of the insurance. Mrs. Buck simply paid the premiums when she received them.

In May 1989, the Bucks became interested in purchasing a thoroughbred horse named Bluegrass. The Bucks had three veterinarians examine the horse and each determined that the horse was in good health. On Thursday, June 29, 1989, Mrs. Buck decided to purchase Bluegrass for $75,000. On Friday, June 30, she called her office and directed Nancy Potts ("Potts") to inform LPI that they were going to buy the horse and needed to add him to their existing policy (which was issued by Lloyds of London).

At nine o'clock Friday morning, Potts called LPI and spoke with Barbara Ghilieri, a customer service representative, informing her about the value of Bluegrass and that the horse, which was stabled in California, would be arriving in Reno early Saturday morning. She requested that Bluegrass be added to the Bucks' existing policy and asked Ghilieri what documents LPI needed to accomplish this request. Ghilieri responded that she needed a veterinarian's certificate and the bill of sale. Because the Bucks did not yet have the bill of sale, Potts called Ghilieri again that morning and asked if a copy of the $75,000 check would be sufficient. According to Potts, Ghilieri responded affirmatively.

From her conversations with Ghilieri, Potts believed that once she faxed the necessary documents to LPI, Bluegrass would be insured. Likewise, through their course of dealings, the Bucks thought that once they sent the requisite documents to LPI, the in-question animal would be insured. Unbeknown to the Bucks, LPI lacked binding authority with respect to equine mortality insurance.[1]

Potts faxed the veterinarian's certificate and a copy of the check to LPI at approximately three o'clock that afternoon. Although Potts remained at work until five o'clock, she had no further contact from Ghilieri that day. Ghilieri also worked until five o'clock, but she did not check the fax machine after three o'clock that afternoon. Thus she did not discover the documents until mid-afternoon of the next day, Saturday. Afterwards, she sent the documents via regular mail to a local agent with binding authority.

---

[1] It is noteworthy that Mrs. Buck's business utilized LPI to insure or procure insurance for boats, homes, automobiles and business parks.

That same day, Saturday, July 1, Bluegrass arrived in Reno. The next day, the Bucks transported him to San Diego, California, for a horse show. On Tuesday, July 4, Mrs. Buck received a telephone call advising her that Bluegrass was sick, and late that evening a veterinarian informed Mrs. Buck that Bluegrass had died.

Mrs. Buck called LPI on July 5. She informed Ghilieri of Bluegrass' death. Ghilieri told Mrs. Buck that Bluegrass had not yet been insured. The Bucks brought this action, alleging that LPI breached its contract to procure insurance, that LPI negligently failed to procure insurance, and that LPI made negligent misrepresentations. The jury returned a verdict in favor of the Bucks on the breach of contract and the negligent failure to procure insurance claims. The jury found for LPI on the negligent misrepresentation claim.

## DISCUSSION

LPI argues that there is insufficient evidence to support the jury verdict. Specifically, LPI argues that even if it had procured the requested insurance, the Bucks' claim would have been denied because they did not establish that Bluegrass was in sound health at the time insurance could have been effective, a condition precedent to coverage.

A party who seeks to recover on an insurance policy has the burden of establishing any condition precedent to coverage. 19 Couch on Insurance § 79:342 (2d ed. 1982). As requested, the Bucks' employee sent LPI a veterinarian's certificate, dated several days earlier, which reported that the horse was in sound health. According to LPI's agent, Barbara Ghilieri, the purpose of the veterinarian's certificate was "to make sure the animal [was] in good health at the time it [was] insured."

Moreover, the Buck's expert testified that Lloyds of London considered the condition of sound health satisfied as long as no one knew of the illness at the inception of the policy. *See* Lasma Corp. v. Monarch Ins. Co. of Ohio, 764 P.2d 1118, 1121-22 (Ariz. 1988) (the insurer had construed its sound health condition precedent to be based upon the knowledge of the insured; thus the court adopted that construction). As there is substantial evidence to support the jury's finding that the condition was satisfied, this court will not disturb it on appeal. *See* Bally's Employees' Credit Union v. Wallen, 105 Nev. 553, 555-56, 779 P.2d 956, 957 (1989).[2]

---

[2]The dissent argues that the Bucks did not satisfy the sound health condition, reasoning that the earliest date that Lloyds of London could have approved the policy was July 3, 1989, but that the horse died of a two-day

LPI next argues that the jury was improperly instructed as to the duty it owed the Bucks under the negligence claim. The jury instruction provided:

> An insurance agency that undertakes to procure insurance for another owes an obligation to its client to use reasonable diligence in attempting to place *the insurance* and to seasonably notify the client if it, the insurance agency, is unable to obtain *the insurance.*

(Emphasis added.) LPI contends that this instruction was too broad because the Bucks merely sought to add Bluegrass to their existing Lloyds of London policy, but the jury was instructed that LPI breached its duty if it failed to obtain insurance, regardless of whether it was through Lloyds of London. This argument is misplaced. The instruction is a strict reading of Keddie v. Beneficial Insurance, Inc., 94 Nev. 418, 420, 580 P.2d 955, 956 (1978). The emphasized language clearly referred to the insurance LPI agreed to procure, namely, to add Bluegrass to the existing policy.

As for its third assignment of error, LPI argues that it was prejudicially denied the right to use the pathology report to argue that Bluegrass became ill before the insurance policy could have become effective. Because the Bucks had no knowledge of the animal's illness, and because they provided the veterinarian's certificate, Lloyds of London's policy of considering the condition precedent satisfied under these circumstances made the pathology report irrelevant.

Finally, LPI argues that the Bucks failed to prove the value of Bluegrass. This argument is meritless. An owner may testify as to the value of his property. *See* City of Elko v. Zillich, 100 Nev. 366, 371, 683 P.2d 5, 8 (1984); Jones v. Northside Ford Truck

---

disease (according to an inadmissible document) on July 4, 1989. The dissent ignores, however, the fact that Lloyds of London considered this sound health condition satisfied if the veterinarian's certificate was provided and if no one knew of the horse's illness at the inception of the policy. The Bucks provided a veterinarian's certificate of sound health and did not know of Bluegrass' illness until July 4.

Additionally, the effective date for a prior equine mortality insurance policy which LPI had procured for the Bucks was made retroactive. That policy was approved by Lloyds of London on May 18, 1988, but the effective date was May 16, 1988—the date Ghilieri faxed the veterinarian's certificate and the horse's registration to the local agent with binding authority. Here, if Ghilieri would have sent Bluegrass' documents on the date they were received by LPI, the insurance policy could have become effective on that date, June 30, 1989.

Sales, Inc., 556 P.2d 117, 121 (Or. 1976). Mrs. Buck purchased Bluegrass for $75,000 and testified that, in her opinion, Bluegrass was worth that price. Moreover, the Bucks' expert testified that the purchase price, if recent, was a proper means to determine the value of the horse.

Accordingly, for the reasons stated above, we affirm the judgment of the district court.

SPRINGER, J., dissenting:

I dissent because, in my view, even if the insurance policy had been issued, there would have been no coverage here. A condition of liability in this case is that "at the commencement of this insurance each animal hereby insured is in sound health and free from any illness, disease, lameness, injury or physical disability whatsoever." The earliest date on which Lloyds of London could have been bound was July 3, 1989; Bluegrass died of a two-day disease on July 4, 1989. The Bucks did not (and could not) establish that Bluegrass was in sound health on July 3, 1989, and thus the condition precedent to coverage was not met. Therefore, even if LPI negligently failed to procure insurance or breached its contract to procure insurance, the Bucks were not affected by this failure or breach because they would not have been covered by the insurance policy even if LPI had procured it.

I also conclude that it was reversible error for the trial court to deny LPI the right to use the pathology report. It should have been admitted as a record of regularly conducted activity under NRS 51.135.