LAS VEGAS METROPOLITAN POLICE DEPARTMENT, APPELLANT, v. COREGIS INSURANCE COMPANY, NKA WESTPORT INSURANCE CORPORATION, RESPONDENT.

54502

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, APPELLANT, v. COREGIS INSURANCE COMPANY, NKA WESTPORT INSURANCE CORPORATION, RESPONDENT.

No. 56638

August 4, 2011                    256 P.3d 958

*Santoro, Driggs, Walch, Kearney, Holley & Thompson* and *James E. Whitmire, III*, and *Donna M. Wittig*, Las Vegas, for Appellant.

*Lewis Brisbois Bisgaard & Smith, LLP*, and *Josh C. Aicklen*, Las Vegas; *Banovetz, Tressler, Soderstrom, Maloney & Priess, LLC*, and *Mark Banovetz*, Chicago, Illinois, for Respondent.

Before the Court EN BANC.

# OPINION

By the Court, GIBBONS, J.:

These appeals raise important issues about insurance claim notice provisions and whether an insurer may properly deny coverage to an insured based on late notice of a claim in the absence of prejudice to the insurer. Because we conclude that prejudice must be shown, we also address the issue of who has the burden to demonstrate prejudice or lack of prejudice and place that burden on the insurer. Before reaching those issues, however, we first address whether summary judgment was appropriately entered in favor of the insurer, when the parties dispute whether the notice was timely, given the language of the insurance policy and the facts present here.

Appellant Las Vegas Metropolitan Police Department (LVMPD) was named as a defendant in a federal district court action alleging civil rights violations. LVMPD had an insurance policy with respondent Coregis Insurance Company to protect against liability for police officer actions when the damages exceeded a certain amount. Coregis denied LVMPD coverage for the civil rights claims because LVMPD did not notify Coregis of LVMPD's potential liability until ten years after the incident that led to the civil rights lawsuit. LVMPD settled the civil rights action, incurring fees and costs in defending the case. LVMPD then filed a declaratory-judgment action seeking a judicial determination that Coregis was required to defend and indemnify LVMPD for damages related to the civil rights claims. On Coregis's motion, the district court entered summary judgment in favor of Coregis, concluding that LVMPD's notice was clearly late and that Coregis was prejudiced by the late notice.

Viewing the evidence in a light most favorable to LVMPD, we conclude that there were genuine issues of material fact regarding the timeliness of LVMPD's notice, such that summary judgment was not appropriate here. With regard to the issues concerning denial of coverage based on failure to comply with notice requirements, after considering the parties' arguments and persuasive caselaw, we conclude that when an insurer denies coverage of a claim because the insured party failed to provide timely notice of the claim, the insurer must demonstrate that notice was late and that it was prejudiced by the late notice in order to assert a late-notice defense to coverage. Accordingly, we reverse the summary judgment and remand this case for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

The civil rights action against LVMPD was filed by the Estate of Erin DeLew on grounds that LVMPD acted to cover up evidence

in the Estate's 1994 wrongful death action against an LVMPD officer's wife, Janet Wagner. According to the wrongful death action, on September 27, 1994, DeLew was riding her bicycle when Wagner struck DeLew with her automobile, causing injuries to DeLew that ultimately led to her death.

In 1996, the DeLew Estate filed a separate civil rights cause of action, under 42 U.S.C. § 1983, against LVMPD and the Nevada Highway Patrol (NHP), arguing that the two organizations conspired and covered up the true cause of the accident, which affected the Estate's ability to prosecute its wrongful death action against Wagner. NHP removed the civil rights case to the United States District Court and that court dismissed the action. The Ninth Circuit Court of Appeals reversed the dismissal, concluding that the Estate had a possible claim under 42 U.S.C. § 1983, but that the claim was premature because the wrongful death cause of action had not been resolved. After the Estate settled the wrongful death claim with Wagner, it filed a second civil rights action against LVMPD and NHP on January 28, 2000, which was essentially identical to the 1996 lawsuit. In 2002, the U.S. District Court granted LVMPD and NHP summary judgment, but three years later, on November 15, 2005, it vacated LVMPD's summary judgment as a discovery sanction. LVMPD had failed to provide the majority of the documents that the DeLew Estate had requested by the discovery deadline and had failed to comply with the discovery sanction order requiring it to provide those documents.

In 1994, when the Estate filed its wrongful death action against Wagner, LVMPD was self-insured up to $1 million dollars in damages for liability related to police officer actions. Thus, it had no primary insurer and would cover each occurrence up to $1 million dollars itself. Through Coregis, LVMPD was insured for up to $10 million dollars if police officer actions resulting in personal injuries, including violations of civil rights, exceeded LVMPD's $1 million self-insured retention amount.[1] The insurance policy contained four different sections: (1) a general liability section, (2) an automobile liability section, (3) a public entity errors and omissions section, and (4) a law enforcement liability section. Three of the sections contained the same notice requirement, which mandated that LVMPD notify Coregis of a claim when a claimant's demand totaled 50 percent or more of the self-insured retention amount. The fourth section, the law enforcement liability section, required LVMPD to provide Coregis notice of an occurrence that may result in a claim as soon as practicable and to immediately

---

[1]Technically, the named insured on the Coregis policy is Clark County, Nevada, and the responsible insurer is Westport Insurance Corporation. For ease of reference, we will refer to the insured as LVMPD and the insurer as Coregis.

provide Coregis copies of any demands or other legal documents. The law enforcement liability section covers liability for bodily injury or property damage caused by a member of LVMPD acting in his or her law enforcement capacity. That section stated that LVMPD was ''solely responsible for the investigation, settlement, defense and final disposition of any claim made . . . against [LVMPD] to which [the law enforcement liability section] would apply.'' The section further stated that LVMPD is financially responsible for such defense, that LVMPD shall act diligently in defending claims, and that LVMPD shall agree to a reasonable offer within their self-insured retention amount. The law enforcement liability section also provided that LVMPD did not have a right to coverage ''unless all of [this section's] terms have been fully complied with.''

In August 2006, the DeLew Estate made its first settlement demand against LVMPD in the civil rights action, seeking $4.5 million. LVMPD notified Coregis of the DeLew Estate's civil rights lawsuit on November 6, 2006. Coregis sent LVMPD a letter acknowledging notice of the DeLew Estate lawsuit, reserving all rights concerning any coverage issues, and denying coverage because LVMPD failed to provide timely notice of the DeLew Estate lawsuit. Despite the denial of coverage, LVMPD requested Coregis to reconsider and attend the settlement conferences between LVMPD and the DeLew Estate, but Coregis declined to participate in the settlement process. LVMPD settled with the DeLew Estate in March 2007 for $1.475 million. LVMPD allegedly incurred $803,136.58 in fees and costs in defending the lawsuit.

Following the settlement, LVMPD filed a declaratory-judgment action seeking a judicial determination that Coregis was required to defend and indemnify LVMPD in the civil rights action under the Coregis policy. Coregis filed a motion for summary judgment, which the district court granted, finding that LVMPD failed to provide timely notice of the claims against it, such that coverage was properly denied, and finding that while Coregis did not need to show that it was prejudiced by the late notice, it was able to do so because of the discovery sanction overturning LVMPD's summary judgment in the civil rights cause of action. LVMPD now appeals.[2]

[2]Because LVMPD failed to provide any argument or citation to authority on the issues of whether the district court erred in denying its post-judgment motion under NRCP 60(b) and whether the district court erred in denying its post-judgment motion to supplement the record, we will not address these issues. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006); NRAP 28(a)(8)(A).

## DISCUSSION

### I. *Standard of review*

The interpretation of an insurance policy presents a legal question, which we review de novo. *Farmers Ins. Exch. v. Neal*, 119 Nev. 62, 64, 64 P.3d 472, 473 (2003). We also review summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). A court may grant summary judgment if the evidence does not create a genuine issue of material fact. *Id.* In considering a motion for summary judgment, the court must view the evidence and any reasonable inferences in the light most favorable to the nonmoving party. *Id.* When requesting summary judgment, the moving party bears the initial burden of production to demonstrate the absence of a genuine issue of material fact. *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602, 172 P.3d 131, 134 (2007). If the moving party meets its burden, then the nonmoving party bears the burden of production to demonstrate that there is a genuine issue of material fact. *Id.*

### II. *An issue of fact remains regarding whether the notice was timely*

LVMPD contends that the district court erred in granting Coregis summary judgment because genuine issues of material fact remained concerning whether LVMPD timely tendered its insurance claim to Coregis.[3] We agree.

When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that it complied with that term. *Insurance Co. v. Cassinelli*, 67 Nev. 227, 244-45, 216 P.2d 606, 615 (1950); *Lucini-Parish Ins. v. Buck*, 108 Nev. 617, 620, 836 P.2d 627, 629 (1992).

Under the facts present here, the district court erred in concluding that notice was late as a matter of law. The civil rights ac-

---

[3]LVMPD also argues that the district court erred in concluding that Coregis did not waive its late-notice claim defense. We disagree. By including its late-notice defense in its first denial letter, along with the other grounds for the denial, Coregis did not waive its late-notice defense because it asserted it at the same time it denied the claim on other grounds. *See Havas v. Atlantic Insurance Co.*, 96 Nev. 586, 588, 614 P.2d 1, 2 (1980); 46 C.J.S. *Insurance* § 1190 (2007). Further, although LVMPD contends that a Coregis insurance adjuster orally agreed to waive the late-notice defense, the policy provides that "[t]he terms of this policy can be amended or waived only by endorsement issued by [Coregis] and made a part of the policy."

tion was originally dismissed in 1997 and lay dormant until it was refiled in 2000. Then, LVMPD was granted summary judgment on the civil rights action in 2002, and the case lay dormant again until 2005. Notice during the years of dormancy would have been futile. Further, LVMPD sent notice to Coregis on November 6, 2006, after it had received its first settlement demand that was in excess of its self-insured retention amount. Coregis refused to participate in the settlement negotiations, and LVMPD did not settle until March 2007.

When considering these facts and the conflicting notice provisions within the insurance policy in the light most favorable to LVMPD, summary judgment was inappropriate here. Three sections of the 75-page insurance policy contained notice provisions requiring LVMPD to provide Coregis with notice of a claim once a demand was made in excess of $500,000. LVMPD relied on these notice sections. When Coregis originally denied LVMPD's claim, it cited to the law enforcement liability section, which required notice as soon as practicable,[4] and it cited to the public entity's errors and omissions section, which required notice after a demand of at least $500,000. Therefore, it was not unreasonable for LVMPD to believe that it did not need to provide notice to Coregis until a demand was made in excess of $500,000.[5]

---

[4]Even considering the facts in accordance with only the law enforcement liability section, the district court could not conclude that notice was late as a matter of law. First, the law enforcement liability section states that LVMPD must notify Coregis of an occurrence that may result in a claim *as soon as practicable*. Second, it states that LVMPD must *immediately* send Coregis copies of any documents filed in connection with the claim. Lastly, it states that LVMPD is "solely responsible for the investigation, settlement, defense and final disposition of any claim." Requiring LVMPD to immediately send copies of documents filed in connection with the defense of the claim creates the implication that Coregis would want to be involved in defending the claim, which is inconsistent with the requirement that LVMPD solely defend and settle the claim. Additionally, the language "as soon as practicable" does not mean immediate; instead, it " 'call[s] for notice within a reasonable length of time under all facts and circumstances of each particular case.' " *American Fidelity Fire Ins. v. Adams*, 97 Nev. 106, 108, 625 P.2d 88, 89 (1981) (quoting *Certified Indemnity Company v. Thun*, 439 P.2d 28, 30 (Colo. 1968)).

[5]Coregis contends that LVMPD was a sophisticated party to the insurance policy, and thus, it cannot argue that it was confused by the policy. We disagree. Even if LVMPD is a sophisticated party, considering the evidence in the light most favorable to LVMPD, summary judgment was inappropriate. *See National Union Fire Ins. v. Reno's Exec. Air*, 100 Nev. 360, 365, 682 P.2d 1380, 1383 (1984). An insured party's status as a sophisticated party does not overcome the purpose behind construing unclear insurance provisions against the insurer without evidence that the insured party was actually involved in drafting the policy provision in question or participated in negotiations involving that policy provision. *See Pittston Co. Ultramar America v. Allianz Ins.*, 124 F.3d 508, 521 (3d Cir. 1997).

LVMPD's belief that it did not have to provide Coregis notice until the $500,000 self-insured retention amount was exceeded is supported by the notion that immediate notice of an insurance claim is not required in the excess insurance context.[6] *See Lumbermens Mut. v. Plantation Pipeline*, 447 S.E.2d 89, 90-91 (Ga. Ct. App. 1994) (concluding that a 15-year delay was reasonable because the insured did not think it was likely that the damages would exceed the ceiling of its primary policy until then); *Morris Park Contr. Corp. v. National Union Fire*, 822 N.Y.S.2d 616, 619 (App. Div. 2006) (concluding that the issue of notice looks at whether the insured reasonably believed that its primary insurance was going to cover the damages up until it gave notice to its excess insurer). Excess insurers are generally only concerned with occurrences that may involve their policies. Accordingly, summary judgment was inappropriate here because the determination of whether notice was late is a much more fact-intensive inquiry when an excess insurance policy is involved than it is when a primary insurance policy is involved, and there were still genuine issues of material fact present concerning whether LVMPD's notice was timely under any of the notice provisions.

III. *When an insurer asserts a late-notice defense, it must show that notice was late and that it was prejudiced by the late notice*

LVMPD urges adoption of a notice-prejudice rule, which requires that in order for an insurer to deny a claim based on late notice, it must have been prejudiced by the late notice. We do so here and place the burden to show prejudice on the insurer. It is more practical and equitable to require the insurer to prove it has been prejudiced than it would be to place that burden on the insured party and require him or her to prove a negative, namely, that the insured had not been prejudiced.

In *Insurance Co. v. Cassinelli*, 67 Nev. 227, 216 P.2d 606 (1950), we considered whether the insured party's recovery was precluded because he provided late notice of the claim to his insurer. *Id.* at 232, 216 P.2d at 609. Cassinelli was a passenger in a car that was owned and being driven by his adult son when their car collided with Mabel Miller's car, injuring Miller. *Id.* Miller

---

[6]Coregis argues that because LVMPD did not have traditional primary insurance as it was self-insured, Coregis was LVMPD's primary insurer, not an excess insurer. However, the Coregis policy specifically states that it is an excess insurance policy to any other insurance available to LVMPD, except for insurance purchased to cover excess damages not covered by LVMPD's self-insured retention. The policy's title includes the word "excess," as does each section's title.

sued both Cassinelli and his son, serving Cassinelli on September 19, 1946. *Id.* at 233, 216 P.2d at 609. Cassinelli did not provide notice to his insurer until January 16, 1947, and the trial was set for February 20, 1947. *Id.* Cassinelli claimed that he failed to notify his insurer earlier because he thought his insurance had lapsed and that he was then insured by a different insurer. *Id.* The insurance policy provided that

> [u]pon the occurrence of an accident written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. . . . If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

*Id.* at 232-33, 216 P.2d at 609. The policy further stated that the insured cannot file an action against "the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy." *Id.* at 233, 216 P.2d at 609.

The *Cassinelli* court surveyed other jurisdictions' consideration of this issue and determined that the majority rule at the time was that if an insurance policy explicitly required timely notice and the insured party failed to provide timely notice, the insured party was precluded from bringing a claim against the insurer, whether or not the insurer was actually prejudiced by the late notice. *Id.* at 236-44, 216 P.2d 611-15. In coming to its conclusion, this court stated:

> We may say frankly that upon our first reading of the briefs prior to argument and at the conclusion of the argument, we were strongly impressed with the cases presented to the effect that right of recovery under the policy would not be barred by failure to give timely notice, unless the insurer had been prejudiced by such failure. The arguments in favor of such rule seemed plausible and the rule itself appeared neither unfair nor inequitable. . . . It would be presumptuous on our part to establish a rule of law in this state which departs from the overwhelming majority of decisions throughout the United States.

*Id.* at 245, 216 P.2d at 615. Thus, this court adopted the majority rule at the time and rejected a rule that would require insurers to demonstrate prejudice in the event they receive late notice. As a result, this court concluded that because a four-month delay in providing notice of a lawsuit failed to comply with the policy's provision that notice be provided immediately, the claim was precluded. *Id.* at 245-46, 216 P.2d at 615.

We acknowledge that *Cassinelli* has since been abrogated by NAC 686A.660(4) and abrogated *sub silentio* by *Las Vegas Star Taxi, Inc. v. St. Paul Insurance*, 102 Nev. 11, 714 P.2d 562

(1986). In 1980, the Nevada Department of Commerce, Division of Insurance, adopted NAC 686A.660(4), which states:

> No insurer may, except where there is a time limit specified in the insurance contract or policy, require a claimant to give written notice of loss or proof of loss within a specified time or seek to relieve the insurer of the obligations if the requirement is not complied with, *unless the failure to comply prejudices the insurer's rights.*[7]

(Emphasis added.)

Following the enactment of NAC 686A.660, we considered *Star Taxi*, in which an injured party sued a taxi company and the taxi company failed to provide notice of the claim to its insurance company until ten days before the trial date even though the policy explicitly required prompt notice. 102 Nev. at 12-13, 714 P.2d at 563. The taxi company settled the claim without first discussing the settlement with its insurance company, and when the insurance company denied coverage, the taxi company sued, seeking to recover under the policy. *Id.* at 11-12, 714 P.2d at 562. The district court entered summary judgment in favor of the insurer, and the taxi company appealed. *Id.* On appeal, without referencing *Cassinelli* or NAC 686A.660(4), this court first considered the issue of notice and then, in passing, addressed the issue of prejudice, thus implicitly abrogating *Cassinelli*. *Id.* at 13-14, 714 P.2d at 564.

The majority of jurisdictions since 1950 have adopted a notice-prejudice rule. *See* Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* 197-267 (15th ed. 2011 Supp.); 16 Richard A. Lord *Williston on Contracts* § 49:109 (4th ed. 2000); 13 *Couch on Insurance 3D* § 193:25 (2005). Further, the majority of jurisdictions that require a showing of prejudice place that burden on the insurer. *See* Ostrager & Newman, *supra*, at 205; *Williston on Contracts, supra*, § 49:109. Jurisdictions that place the burden to show prejudice on the insurer recognize the difficulty the insured party would face in trying to prove that the insurer was not prejudiced and recognize that the insurer is in the better position to prove that it was prejudiced by the late notice. *See Campbell v. Allstate Insurance Company*, 384 P.2d 155, 157 (Cal. 1963) ("Although it may be difficult for an insurer to prove prejudice in some situations, it ordinarily would be at least as difficult for the injured person to prove a lack of prejudice, which involves the proof of a negative."); *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 803 (Ky. 1991) ("[T]he insur-

---

[7]Coregis argues that NAC 686A.660 does not overrule *Cassinelli* because NAC 686A.660 does not apply to third-party claims. We are not persuaded by Coregis's argument because NAC 686A.660(4), which is at issue here, applies to all claimants.

ance carrier is in a far superior position to be knowledgeable about the facts which establish whether prejudice exists. . . . [I]t is difficult to imagine where the claimant would look for evidence that no prejudice exists.'').

Additionally, because insurance policies are generally adhesion contracts, equity principles support placing the burden to prove prejudice on the insurer because it is trying to deny its obligations under a contract of adhesion. *See State Farm Mutual Automobile Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974); *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 198 (Pa. 1977). Because the notice provision in an insurance policy is meant to protect the insurer '' 'from being placed in a substantially less favorable position than it would have been in had timely notice been provided . . . [meaning] the function of a notice requirement is to protect the insurance company's interests from being prejudiced,' '' it is equitable and practicable to place the burden on the insurer to demonstrate that prejudice resulted from the insured giving late notice. *Co-Op. Fire Ins. v. White Caps, Inc.*, 694 A.2d 34, 38-39 (Vt. 1997) (quoting *Brakeman*, 371 A.2d at 197).

In accordance with the majority of jurisdictions and with the express language of NAC 686A.660(4), we adopt a notice-prejudice rule: in order for an insurer to deny coverage of a claim based on the insured party's late notice of that claim, the insurer must show (1) that the notice was late and (2) that it has been prejudiced by the late notice. Prejudice exists ''where the delay materially impairs an insurer's ability to contest its liability to an insured or the liability of the insured to a third party.'' *West Bay Exploration v. AIG Specialty Agencies*, 915 F.2d 1030, 1036-37 (6th Cir. 1990) (internal quotation omitted). The issue of prejudice is an issue of fact. *See Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 876 (Wash. 2008).

## CONCLUSION

In conclusion, we reverse the district court's summary judgment and adopt a notice-prejudice rule. First, the district court erred in granting Coregis summary judgment when there were still genuine issues of material fact as to whether notice was late. Second, when an insurer denies coverage of a claim because notice of the claim was late, the insurer must show (1) that notice was late and (2) that it was prejudiced by the late notice. Accordingly, we reverse the judgment of the district court and remand this matter for proceedings consistent with this opinion.

DOUGLAS, C.J., and CHERRY, SAITTA, PICKERING, HARDESTY, and PARRAGUIRRE, JJ., concur.