STUARD T. STEPHANS, AKA STUARD STEPHANS,
APPELLANT, *v*. THE STATE OF NEVADA, RESPONDENT.

No. 52254

October 6, 2011                                     262 P.3d 727

*Bailus Cook & Kelesis, Ltd.*, and *Dayvid J. Figler*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *David J. Roger*, District Attorney, *Sandra DiGiacomo*, Chief Deputy District Attorney, and *Nancy A. Becker*, Deputy District Attorney, Clark County, for Respondent.

Before HARDESTY, DOUGLAS and PICKERING, JJ.

## OPINION

By the Court, PICKERING, J.:

To establish grand larceny in this felony shoplifting case, the State needed to prove that the stolen goods had a value of $250 or more. Here, the only proof of value came from the department store's loss prevention officer. He testified, over the defense's

foundation, hearsay, and best evidence objections, that the stolen goods he recovered bore price tags adding up to $477. Neither the price tags nor duplicates of them were offered or admitted.

The defense objections to this testimony should have been sustained. While there are several ways to establish value in a shoplifting case, testimony from a witness whose knowledge rests on what he remembers reading on a price tag is not, without more, one of them. For this reason, we reverse and remand for a new trial on the grand larceny charge. We affirm the judgment of conviction as to conspiracy and burglary.

## I.

Appellant Stuard Stephans and a companion (who pleaded guilty before trial) stole six bottles of men's cologne from Abercrombie & Fitch, a retail department store in the Las Vegas Fashion Show Mall. The store's loss prevention field agent, David Scott, apprehended the duo, recovered the stolen cologne, and called the police.

At trial, the State relied on Scott to prove both theft and value. Scott prefaced his testimony with a perfunctory explanation of his duties. He described himself as responsible for loss prevention in Abercrombie & Fitch's 12 Las Vegas stores; he gave his background as being in criminal justice, generally, and investigation of retail crime by professional thieves, in particular. By the time of trial, Scott had changed employers and no longer worked for Abercrombie & Fitch.

Through Scott, the State established that Stephans and his companion each took three bottles of Ezra Fitch men's cologne, for a total of six bottles, without paying. Some of their activity was captured on security videotape, which Scott authenticated.

On value, Scott testified that he "believe[d]" Abercrombie & Fitch carried four brands of men's cologne, including a brand called Ezra Fitch. The State asked Scott: "And the Ezra Fitch [cologne], where would that have fallen on the scale of price?" Stephans objected to the lack of foundation, which the court sustained. Scott was then asked, "How would you know the price of the cologne in the store?" and "Are there price tags on it or how do you know how much the merchandise cost?" Scott's response was, "*The same as any customer would know . . . there is a price tag on it.*" (Emphasis added.)

The defense added hearsay and best evidence objections to its foundation challenge to Scott's value testimony.[1] After an off-the-record colloquy, the court allowed the State to proceed:

---

[1]Although Stephans's best evidence objection was not as clearly stated as it could have been, the State does not challenge its sufficiency and, indeed, con-

Q. Sir, my question was with regard to the Ezra Fitch cologne . . . where was it on the price range with regard to the four colognes that were sold at Abercrombie & Fitch?

A. It would have been at the top of the price range in regard to those colognes that we sell. That was our high end brand.

Q. What was the approximate price per bottle?

A. It was exactly 79.50 per bottle.

Q. That was, would have been the price tag that was on the box?

A. That's correct.

Multiplying price ($79.50) by number of bottles stolen (6) works out to $477, which is more than $250. Thus did the State establish value.

The jury convicted Stephans of grand larceny and burglary, both felonies, and conspiracy to commit larceny, a gross misdemeanor. The district court deemed Stephans a habitual criminal because of his record. The court sentenced Stephans for the felonies to 20 years in prison, with minimum parole eligibility at 7 years, the sentences to run concurrently.

## II.

Stephans argues that the loss prevention officer's value testimony should have been excluded because it lacked foundation, involved hearsay, and violated the best evidence rule. He further argues that, without this evidence, his grand larceny conviction cannot stand. He seeks acquittal of grand larceny based on insufficiency of the evidence. While we agree with Stephans's assignments of evidentiary error, the remedy for such error is reversal and remand for a new trial on the grand larceny charge, not appellate acquittal.

### A.

Grand larceny consists of intentionally stealing property, owned by another person, having a value of $250 (now $650) or more. NRS 205.220(1)(a).[2] "Value" in larceny cases is statutorily de-

---

cedes in its answering brief that "Stephans objected to Scott's testimony regarding sales price on hearsay grounds and under the best evidence doctrine." We therefore treat the best evidence objection as preserved.

[2]As written at the time relevant to this appeal, NRS 205.220(1)(a) provided that "a person commits grand larceny if the person: (1) intentionally steals, takes and carries away, leads away or drives away: (a) [p]ersonal goods or property, with a value of $250 or more, owned by another person." The 2011 Legislature increased the amount from $250 to $650 but otherwise left NRS 205.220(1)(a) unchanged. A.B. 142, 76th Leg. (Nev. 2011).

fined. Drawing on section 223.1(2)(c) of the Model Penal Code, NRS 205.251(1) provides: "The value of property involved in a larceny offense shall be deemed to be the highest value attributable to the property by any reasonable standard." While the provision's purpose "is to put the transaction in a higher rather than a lower category where any one of several possible criteria of value justifies the higher classification," Model Penal Code and Commentaries § 223.1 cmt. 3(b), at 141 (Official Draft and Revised Comments 1980), the burden remains with the State to prove value as an element of the crime. Thus, the State must "prove by evidence beyond a reasonable doubt that the value of the property, by any reasonable standard, exceeds [the statutory threshold amount]," here, $250. *State v. Ensz*, 503 N.W.2d 236, 238 (N.D. 1993) (construing comparable North Dakota statute).

We generally review a district court's decision to admit or exclude evidence for an abuse of discretion, *Hernandez v. State*, 124 Nev. 639, 646, 188 P.3d 1126, 1131 (2008), but to the extent the evidentiary ruling rests on a legal interpretation of the evidence code, de novo review obtains. *See United States v. LeShore*, 543 F.3d 935, 941 (7th Cir. 2008).

In *Calbert v. State*, 99 Nev. 759, 670 P.2d 576 (1983), we deemed "evidence of price tags attached to the goods at the time of the theft . . . competent evidence of the value of the stolen goods for purposes of establishing grand larceny . . . from a retail department store." *Id.* at 759-60, 670 P.2d 576. But in *Calbert*, the price tags were admitted in evidence, apparently without objection. The challenge was to the sufficiency of the price tag evidence, not its admissibility.

In this case, by contrast, the *only* evidence of value came from Scott, a former loss prevention officer for Abercrombie & Fitch, who testified *over objection* to what he remembered reading on the stolen goods' price tags. Scott was neither offered nor qualified as an expert under NRS 50.275. Nor did the State establish that Scott had the personal knowledge required to give lay opinion testimony under NRS 50.265, or offer the price tags themselves in evidence.

An owner of property may testify to its value, *Lucini-Parish Ins. v. Buck*, 108 Nev. 617, 621-22, 836 P.2d 627, 630 (1992), at least so long as the owner has personal knowledge, or the ability to provide expert proof, of value. *See Cunningham v. Masterwear Corp.*, 569 F.3d 673, 676 (7th Cir. 2009) ("[w]hat the owner is not allowed to do is merely repeat another person's valuation"). However, "[n]on-owners who are called to testify to property value must have some personal knowledge on which to base their

estimate . . . . [R]*eading from the price tag on an item is not sufficient.*" 3 Barbara E. Bergman & Nancy Hollander, *Wharton's Criminal Evidence* § 12:27, at 397-400 (15th ed. 1999) (emphasis added). Thus, absent foundation, "[m]ost courts have held that the testimony of a security officer is incompetent to prove the value of stolen goods when it is based on the officer's recollection of the prices written on the price tags, because the security officer has no knowledge of the pricing system." *Eldridge v. United States*, 492 A.2d 879, 882 (D.C. 1985); *see DeBruce v. State*, 461 So. 2d 889, 891 (Ala. Crim. App. 1984) ("Store security officers are not qualified to testify as to the value of stolen merchandise where their knowledge is based solely on the price ticket"); *State v. Love*, 711 P.2d 1240, 1242 (Ariz. Ct. App. 1985) (the testimony of a security employee who "had no involvement in merchandising, selling, or pricing items at the store" held inadmissible to prove value); *State v. White*, 437 A.2d 145, 149 (Conn. Super. Ct. 1981) ("a witness who testifies as to value must be qualified to do so on the basis of his own personal knowledge or experience; he may not merely transmit information which he receives from outside sources in the field").

Courts that prohibit lay witness opinion testimony as to value based on a remembered price tag do so because they deem the price stated on the tag to be hearsay. A lay witness can testify to matters of fact, such as "the light was red." But a lay witness cannot give opinion testimony based on otherwise inadmissible hearsay. *See* 30 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 6337, at 155 (2d ed. 1997) (discussing FRE 701, the federal counterpart to NRS 50.565, and noting the requirement that lay opinion be "rationally based on the perception of the witness," FRE 701, "restricts the use of [lay] opinions [to those] based on personal knowledge and forbids those based on hearsay").

NRS 51.035 defines hearsay as an out-of-court "statement offered in evidence to prove the truth of the matter asserted." Courts elsewhere have divided on whether price tags amount to hearsay when offered to prove value. Some courts have accepted price tag evidence as a matter of "fact," like an item's color or shape, or as circumstantial evidence, not a direct assertion, of value. *People v. Giordano*, 856 N.Y.S.2d 568, 569 (App. Div. 2008) (holding that price tags were not hearsay because they were "circumstantial evidence" of the price of the merchandise and were "essentially verbal acts by the store, stating an offer to sell at a particular price"); *State v. Pulver*, 95 P.3d 250, 252 (Or. Ct. App. 2004) (where the relevant question is the value of stolen merchandise, price tags are not assertions of the fact to be proved but direct evidence of that fact); *see Norris v. State*, 475 S.W.2d 553, 555-56 (Tenn. Crim. App. 1971) (declaring that the fact an item "was displayed for sale

over a period of time with a certain price tag upon it is not hearsay, but fact; and is evidence that the tag reflected its retail value").[3] Other courts hold that testimony about the price stated on a price tag, when offered as evidence of value, is hearsay. *See People v. Codding*, 551 P.2d 192, 193 (Colo. 1976) (concluding that price tags constitute a written record prepared by someone other than the witness and were offered to prove the truth of the matter asserted—the retail cost of the merchandise), *superseded by* Colo. Rev. Stat. § 18-4-414 (1985) (creating a hearsay exception for price tags); *State v. McPhie*, 662 P.2d 233, 236 (Idaho 1983) (price tags are hearsay when testimony regarding value is based on them); *People v. Mikolajewski*, 649 N.E.2d 499, 504 (Ill. App. Ct. 1995) (price tags are hearsay when offered to prove the price stated on them); *Robinson v. Com.*, 516 S.E.2d 475, 478 (Va. 1999) (price tags are hearsay).

The courts that characterize price tag evidence in a shoplifting case as hearsay do not require much to overcome the hearsay bar. Thus, price tag evidence has been admitted to prove value under the business records exception to the hearsay rule, *Lauder v. State*, 195 A.2d 610, 611 (Md. 1963); *State v. Odom*, 393 S.E.2d 146, 151 (N.C. Ct. App. 1990); *see Twine v. Com.*, 629 S.E.2d 714, 719 (Va. Ct. App. 2006) (register receipts generated by scanned bar codes qualify), on the theory that courts "can properly take judicial notice of the fact that price tags on retail clothing generally reflect the market value of the clothing," *State v. Rainwater*, 876 P.2d 979, 982 (Wash. Ct. App. 1994); *White*, 437 A.2d at 148, and pursuant to a judicially created "exception to the hearsay rule in shoplifting cases permitting the admission into evidence of price tags regularly affixed to items of personalty offered for sale or, in substitution, testimony concerning the amounts shown on such tags when . . . there is no objection to such testimony on best evidence grounds." *Robinson*, 516 S.E.2d at 479.

To admit price tag evidence under the recognized hearsay exceptions, though, requires foundational proof. The price tag must be authenticated and a basis for its admission shown. And, as *Robinson*, 516 S.E.2d at 479, suggests, the best evidence rule may bar oral testimony about the contents of a price tag if the writing itself is not offered and appropriate objection is made. *Compare State v. Mohr*, 632 N.W.2d 382, 387 (Neb. Ct. App. 2001) (best

---

[3]These cases have echoes of Wigmore's "mechanical trace" evidence discussed in *United States v. Snow*, 517 F.2d 441 (9th Cir. 1975), that the "name on a dog collar to prove ownership of [the] dog" or the numbers on a license plate make no assertion of fact, and so are not hearsay at all but circumstantial, identifying evidence. *Id.* at 443-44 (citing 1 *Wigmore on Evidence* §§ 148-157 (3d ed. 1940)). *Snow* and its progeny are criticized in 30B Michael H. Graham, *Federal Practice & Procedure: Evidence* § 7006, at 94-99 (4th ed. 2006).

evidence rule applied to testimony as to value in a shoplifting case where the witness had no knowledge beyond what the price tags said, making the price tags' contents a "controlling issue"), *with State v. Downing*, 654 N.W.2d 793, 797-98 (S.D. 2002) (the district court did not abuse its discretion in admitting over a best evidence objection a senior employee's testimony as to the price of items in her department; the testimony was offered to establish the basis for the employee's testimony, not to prove the price tag contents); *see also United States v. Duffy*, 454 F.2d 809, 812 (5th Cir. 1972) ("When the disputed evidence, such as the shirt in this case, is an object bearing a mark or inscription, and is, therefore, a chattel *and* a writing, the trial judge has discretion to treat the evidence as a chattel or as a writing.").

The record in this case supplies no foundation for Scott's testimony about the value of the stolen cologne beyond his memory of reading the price tags. Scott testified that he knew the price by looking at the price tag "the same as any customer would." His testimony repeated the numbers shown on the tags as the price. This was hearsay, with no exception shown.

Scott's testimony, as framed, also presented a serious best evidence issue that went unresolved. NRS 52.225 defines "writings" to include "numbers." Under NRS 52.235, "[t]o prove the content of a writing . . . the original . . . is required, except as otherwise provided in this title." While NRS 52.245 provides "duplicates" are normally admissible, a "duplicate" refers to a "counterpart" that reproduces the original, *see* NRS 52.195, not secondary oral proof. The substantive law does not make the price shown on the price tag an issue in a grand larceny case, but the State's reliance on Scott to prove value did. Because Scott does not appear to have any knowledge of value apart from the price tag, his testimony squarely implicated the best evidence rule.

> Any witness with knowledge of facts that exist independent of the contents of a writing, recording, or photograph may testify without raising an issue under [the best evidence rule]. This even includes knowledge in the form of recollection that has been refreshed with a writing, recording, or photograph. But where the witness has knowledge only of the contents of such an item, testimony may be excluded under [the best evidence rule].

31 Charles Alan Wright and Victor James Gold, *Federal Practice and Procedure: Evidence* § 7184, at 391 (2000) (discussing FRE 1002, the counterpart to NRS 52.235).

The best evidence rule does not apply to the recovered goods. *See People v. Campbell*, 331 N.Y.S.2d 199, 201 (Crim. Ct. 1972). Further, as the State notes, the expense associated with retail crime often necessitates the immediate return of recovered property to its rightful owner despite a pending prosecution. But this does not excuse the failure to generate a register receipt or photograph of the price tags to establish the price of the recovered goods in a case like this, where retail price was the only proof of value offered. *See* 6 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 1001.03[2] (Joseph M. McLaughlin ed., 2d ed. 2011) (discussing best evidence issues associated with inscribed chattels under FRE 1001, the federal counterpart to NRS 52.225, and noting that they "should be approached pragmatically, focusing on whether there is a serious risk of fraud or faulty memory" and noting the wide availability of cameras to create duplicates and thereby obviate such issues); *see also* NRS 52.385 (providing for the return of stolen property to its owner despite a pending prosecution and permitting use of photographs).

"When the value of property is at issue in a criminal case, there are different methods of proving value, and no one method is preferred over others." *Zellers v. United States*, 682 A.2d 1118, 1120 (D.C. 1996) (footnote omitted). The record here, however, establishes this as a textbook case "in which a person wants to testify to the value of goods in reliance on the price tags affixed by a merchant. For this purpose the price tags are hearsay and a lay witness could not testify to such an opinion." 30 *Federal Practice & Procedure: Civil, supra*, § 6337, at 156. The district court committed legal error when it ruled that the price tag testimony offered in this case did not involve hearsay. Because the State did not establish a record basis for overcoming Stephans's foundation, hearsay, and best evidence objections, we conclude that the district court abused its discretion in admitting this evidence.

## B.

Without Scott's testimony as to price, the record does not establish grand larceny, because nothing says the value of the stolen cologne amounted to $250 or more. Scott recalled another Abercrombie & Fitch cologne priced at between $24 and $34.50 a bottle which, multiplied by the six bottles stolen, would not have crossed the line dividing grand from petit larceny. The error in the admission of Scott's testimony thus cannot be said to be harmless, since the grand larceny conviction depended on it. *See also Zellers*, 682 A.2d at 1121 (given the "important difference between a misdemeanor and a felony conviction" it is appropriate to

require adequate affirmative proof of value in felony shoplifting cases, "especially when the value alleged is close to the line dividing one offense from another" (internal quotations omitted)).

While Stephans is entitled to reversal and retrial on the grand larceny charge, his argument for acquittal on that charge based on insufficient evidence fails. Under *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), a defendant is entitled to acquittal if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Acquittal based on insufficiency of the evidence rests on the constitutional guarantee against double jeopardy. *Lockhart v. Nelson*, 488 U.S. 33, 40 (1988). In assessing a sufficiency of the evidence challenge, " 'a reviewing court must consider all of the evidence admitted by the trial court,' *regardless whether that evidence was admitted erroneously*." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (emphasis added) (quoting *Lockhart*, 488 U.S. at 41).[4] This is because an appellate court "cannot know what evidence might have been offered if the evidence improperly admitted had been originally excluded by the trial judge." *United States v. Sarmiento-Perez*, 667 F.2d 1239, 1240 (5th Cir. 1982). Assessing the record with the erroneously admitted price tag testimony, the evidence was sufficient to sustain Stephans's grand larceny conviction. *See Calbert v. State,* 99 Nev. 759, 759-60, 670 P.2d 576, 576 (1983). The remedy for the evidentiary error committed here thus is reversal and remand for a new trial, not acquittal.[5]

---

[4] Our case law concerning sufficiency of the evidence makes occasional reference to "competent" evidence. *See, e.g.*, *Hernandez v. State*, 118 Nev. 513, 531, 50 P.3d 1100, 1112 (2002) (to determine sufficiency, "this court must determine whether the jury, acting reasonably, could have been convinced by the *competent* evidence of the defendant's guilt beyond a reasonable doubt" (emphasis added)); *Braunstein v. State*, 118 Nev. 68, 79-80, 40 P.3d 413, 421 (2002); *see Collman v. State*, 116 Nev. 687, 711, 7 P.3d 413, 441 (2000); *Garner v. State*, 116 Nev. 770, 779, 6 P.3d 1013, 1019 (2000), *overruled on other grounds by Sharma v. State*, 118 Nev. 648, 56 P.3d 868 (2002). "Competent" in the context of a sufficiency of the evidence analysis does not mean properly admitted; rather, it refers to evidence that was placed before the jury by the court to the exclusion of evidence extraneous to the judicial proceedings. *See Crowe v. State*, 84 Nev. 358, 366-67, 441 P.2d 90, 95 (1968) ("The test . . . for sufficiency upon appellate review is . . . whether this court can conclude the trier of facts could, acting reasonably, be convinced to the degree of certitude by the evidence which it had a right to believe and accept as true."). Accordingly, we consider all evidence admitted at trial when reviewing Stephans's claim of insufficient evidence, including the evidence erroneously admitted by the district court.

[5] It is unclear whether the conviction for grand larceny led the district court to impose a harsher sentence for the burglary conviction than it otherwise would have imposed. If Stephans is acquitted of grand larceny on remand and that acquittal would have an ameliorative impact on the district court's sen-

Stephans makes an additional, separate sufficiency of the evidence challenge. He contends that, even accepting Scott's testimony as to the price of the Ezra Fitch cologne, he had only three bottles on his person, not six. In his view, the jury should not have been permitted to aggregate the cologne he stole with the three bottles his cohort stole. Multiplying the $79.50 Ezra Fitch price tag by three instead of six works out to $238.50 per person, falling short of the $250 grand larceny threshold. NRS 205.251(2) defeats this challenge: "The value of property involved in larceny offenses committed by one or more persons pursuant to a scheme or continuing course of conduct may be aggregated in determining the grade of the larceny offenses."

## III.

Finally, Stephans seeks reversal of his burglary and conspiracy convictions based on claimed error by the district court in rejecting a proposed jury instruction, denying his for-cause challenges to two members of the jury venire, and limiting voir dire. We review these claims of error for an abuse of discretion, *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) (reviewing district court's decision regarding jury instructions for abuse of discretion); *Blake v. State*, 121 Nev. 779, 795, 121 P.3d 567, 577 (2005) ("the district court enjoys broad discretion in ruling on challenges for cause"); *Cunningham v. State*, 94 Nev. 128, 130, 575 P.2d 936, 937-38 (1978) (the scope of voir dire examination is within the sound discretion of the district court and the court's determination is accorded considerable latitude on appeal), and we find no abuse of discretion here.

Accordingly, while we affirm the burglary and conspiracy convictions, we reverse and remand for further proceedings consistent with this opinion on the grand larceny charge.

HARDESTY and DOUGLAS, JJ., concur.

---

tencing determination on the burglary conviction, the court may reconsider that sentence. The court may not, however, increase the sentence for the burglary on remand. *See Wilson v. State*, 123 Nev. 587, 170 P.3d 975 (2007). On remand, the district court may also consider Stephans's due process challenge to the grand larceny charge. We express no opinion as to this argument, which Stephans raised for the first time on appeal.